**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Tetyana Kochetkova<br><br>*Plaintiff,*<br><br>v.<br><br>Garnet Health Medical Center<br><br>*Defendant.* | Civil Action No. 22-06967 (MEF) (JSA)<br><br>**OPINION and ORDER** |

**Table of Contents**


I. Background

A. Allegations

B. Procedural History

C. The Motion

II. Venue

A. What Law Applies?

1. Text

2. The Specific Trumps the General

3. Precedent

B. Applying the Law

C. Conclusion

III. Dismissal or Transfer

A. The Interest of Justice

B. Forum Shopping and Bad Faith

IV. Conclusion

A hospital employee sought a religious accommodation, so she would not have to get a Covid-19 shot. The hospital denied the request, and fired the employee.

The employee sued under the Civil Rights Act of 1964.

The hospital now moves to dismiss or, in the alternative, to transfer venue.

The motion to dismiss is denied. The motion to transfer is granted.

## I. Background

### A. Allegations

The allegations that are relevant for now are as follows.

The employee ("the Plaintiff") worked at a hospital in New York ("the Defendant"). See Complaint at 4. The hospital required certain employees, including the Plaintiff, to be vaccinated against Covid-19. See id. The Plaintiff sought a religious accommodation as to this requirement. See id. The Defendant denied the Plaintiff's request, and then fired her. See id.

### B. Procedural History

The Plaintiff filed this lawsuit. She claims the Defendant discriminated against her in violation of the Civil Rights Act of 1964.[1]

The lawsuit was filed during December of 2022. It was re-assigned to the undersigned during June of 2023.

### C. The Motion

The Defendant filed a motion arguing this court is not a proper venue. See Motion to Dismiss Brief at 1. Accordingly, the Defendant seeks to dismiss this case, or, in the alternative, to transfer the case to a federal court in New York that assertedly has venue. See id.

---

[1] Title VII of the Act prohibits, among other things, discrimination based on religion. See generally Webb v. City of Philadelphia, 562 F.3d 256, 259 (3d Cir. 2009). For simplicity, this opinion refers to Title VII of the Civil Rights Act of 1964 as "the Civil Rights Act."

The motion became fully submitted two days ago, with the filing of the Plaintiff's response to the Defendant's recent brief.

The Court's analysis of the motion is in two parts.

First, in Part II, the Court considers whether it has venue. The Court's conclusion: it does not.

Given this lack of venue, in Part III the Court asks: should the case be dismissed (what the Defendant wants) or transferred (what the Defendant wants on a second-best, in-the-alternative basis)? The Court's conclusion: dismissal is not appropriate, transfer is.

## II. Venue

The United States is split into judicial districts, see 28 U.S.C. §§ 81-130, and "venue" statutes determine the district in which a given federal lawsuit may be filed. See, e.g., TC Heartland LLC v. Kraft Foods Grp. Brands. LLC, 581 U.S. 258, 263-64 (2017).

These statutes include an over-arching general venue statute. See 28 U.S.C. § 1391. The general venue statute purports to apply generally --- across the board, to all civil lawsuits.[2]

In addition, there are certain narrower venue provisions. There are hundreds of these. See 14D Fed. Prac. & Proc. Juris. (Wright & Miller) § 3801 (4th ed.). These venue provisions zero in. They apply only to claims brought under a particular law.

---

[2] The general venue statute reads in relevant part:

> A civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situation; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

As noted, the Plaintiff sued under the Civil Rights Act of 1964. As part of that Act, Congress built in a special venue provision.[3] It is 42 U.S.C. § 2000e-5(f)(3).[4]

In light of all this, to determine whether there is venue in this case the Court must first decide which venue law applies --- the general venue statute, or the Civil Rights Act's special venue provision.[5]

**A. What Venue Law Applies?**

When a law has its own special venue provision, the venue provision is sometimes thought of as exclusive --- as setting out the only way venue can be established for claims under the law. See generally 14D Fed. Prac. & Proc. Juris. (Wright & Miller) § 3801 (4th ed.) (collecting examples).

Sometimes, though, a special venue provision is thought of as additive. On this approach, the general venue statute provides

---

[3] This special venue provision applies to claims of the sort at issue in this case: workplace discrimination claims under Title VII of the Civil Rights Act of 1964.

[4] The provision reads in relevant part:

> Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

[5] This is an open question in the Third Circuit. And it is not an abstract one. The general venue statute and the special venue provision allow for venue based on facts that relate to where the alleged workplace discrimination took place. Compare 42 U.S.C. § 2000e-5(f)(3) with 28 U.S.C. § 1391(b)(2). But the general venue statue also allows for venue based on where a defendant corporation/employer is subject to personal jurisdiction. See 28 U.S.C. § 1391(b)(1), § 1391(c)(2). This is a practically important distinction, including as to where defendant-employers might seek to transfer a case. See 28 U.S.C. § 1404(a).

one way that venue can be established. And the applicable special venue provision provides another. See generally id.

The Supreme Court has in some cases taken the exclusive approach. See TC Heartland LLC, 581 U.S. at 263-64; Radzanower v. Touche Ross & Co., 426 U.S. 148, 158 (1976); Interstate Com. Comm'n v. Atlantic Coast Line. R. Co., 383 U.S. 576, 583 (1966); Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 229 (1957); Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 563 (1942); cf. Citizens & Southern Nat. Bank v. Bougas, 434 U.S. 35, 38 (1977).

In other cases it has taken the additive approach. See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co., 529 U.S. 193, 204 (2000); Pure Oil Co. v. Suarez, 384 U.S. 202, 207 (1966).

The various Supreme Court cases point in different directions. But they do not contradict each other. Rather, "they simply show that analysis of special venue provisions must be specific to the statute." Cortez Byrd Chips, Inc., 529 U.S. at 204.

Here, the "specific" statutory analysis to be undertaken is of the general venue statue, see 28 U.S.C. § 1391(b), and the Civil Rights Act's special venue provision, see 42 U.S.C. §2000e-5(f)(3).

Analyzing these, the Court concludes the special venue provision is exclusive. That provision lays out the only way to establish venue for workplace discrimination claims under Title VII of the Civil Rights Act of 1964. The general venue statute does not provide an additional way to establish venue for such claims.

The basis for this conclusion: the text of the general venue statute (Part II.A.1); the principle that the specific supersedes the general (Part II.A.2); and precedent (Part II.A.3).

1. **Text**

Take first the text of the general venue statute. See generally Bartenwerfer v. Buckley, 598 U.S. 69, 74 (2023) ("we start where we always do: with the text of the statute") (cleaned up).

That statute applies "[e]xcept as otherwise provided by law[.]" 28 U.S.C. § 1391(a).

The quoted phrase has a well-established meaning. To see it, step back for a moment.

In many contexts, there are differences between one statute and another. The courts have developed various interpretive techniques for addressing these differences.[6] But "except as provided by law" typically works as an override switch. It is a directive from Congress that courts should not use their normal methods for adjusting one statute to another. Why? Because Congress has already indicated its intended resolution: one statute (the one that applies "except" when another does) must simply give way in favor of the other.

Numerous cases understand "[e]xcept as otherwise provided by law" in essentially this way.[7] For an example, take Interstate Commerce Commission v. Atlantic Coast Line. R. Co., 383 U.S. 576 (1966). There, the Supreme Court held that a broad venue statute (which included the phrase "except as otherwise provided by law") did not apply to cases brought under a certain law, because that law had its own venue provision.

> Venue is determined by 28 U.S.C. § 1398(a) (1964 ed.), which, '(e)xcept as otherwise provided by law,' limits suits to the judicial district where the party bringing the

[6] For example, statutes might be read to bring them into harmony with one another, so that both can be effective. See, e.g., Pom Wonderful LLC v. Coca-Cola Co., 573 U.S. 102 (2014); Savage Servs. Corp. v. United States, 25 F.4th 925, 933 (11th Cir. 2022); PDC Consultants, Inc. v. United States, 907 F.3d 1345, 1357 (Fed. Cir. 2018); see also United States v. Freeman, 44 U.S. 556, 564 (1845) ("it is an established rule of law that all acts in pari materia are to be taken together, as if they were one law"). Another example: a later-in-time statute might be read to take precedence over an earlier one, see, e.g., Cook Cnty Nat. Bank v. United States, 107 U.S. 445, 451 (1883), or it might not, see, e.g., Morton v. Mancari, 41 U.S. 535, 551 (1974).

[7] Some examples: Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 807 (1976); Jones v. Liberty Glass Co., 332 U.S. 524, 530 (1947); PDC Consultants, Inc. v. United States, 907 F.3d 1345, 1360 (Fed. Cir. 2018); In re Miller, 853 F.3d 508, 515 (9th Cir. 2017); United States v. Page, 131 F.3d 1173, 1180 (6th Cir. 1997) abrogated on other grounds, Johnson v. United States, 529 U.S. 694 (2000); United States v. Garcia, 112 F.3d 395, 398 (1997); United States v. Eng, 14 F.3d 164, 173 (2d Cir. 1994); United States v. LeMay, 952 F.2d 995, 998 (8th Cir. 1991) Blumberg v. Bryan, 107 F. 673 (5th Cir. 1901).

> action has his residence or principal office. But because of the quoted exception ['(e)xcept as otherwise provided by law,'], this venue restriction does not apply to suits commenced pursuant to § 16(2), as that section contains its own venue provision.

Id. at 583 (bracketed text added); cf. TC Heartland LLC, 581 U.S. at 263-64.

With this background in mind of what is typically meant by "except as otherwise provided by law," come back to the general venue statute.

As noted, the general venue statute applies "[e]xcept as otherwise provided by law[.]" 28 U.S.C. § 1391(a). Special venue provisions are just that: "other[] provi[sions][of] law[.]" Accordingly, the general venue statute applies across the board, but not ("except") when a special venue provision is in play. This means that when a special venue provision applies, the general venue statute simply has no more work to do. It is displaced.

That is the case here. The Civil Rights Act of 1964 includes a special venue provision. See 42 U.S.C. § 2000e-5(f)(3). The special venue provision pushes aside the general venue statute, which applies "[e]xcept as otherwise provided by law." 28 U.S.C. § 1391(a). And the special venue provision sets out the exclusive way for establishing venue in workplace discrimination cases under the Act. Cf. Superior Oil Co. v. Andrus, 656 F.2d 33, 35 n.4 (3d Cir. 1981).[8]

---

[8] Note another text-based reason the special venue provision is exclusive. The Civil Rights Act of 1964 indicates that, as to suits involving the government, "[t]he [special venue] provisions . . . shall govern[.]" 42 U.S.C. § 2000e-16(d) (emphasis added). This is mandatory and unambiguous language. See Bolar v. Frank, 938 F.2d 377, 378-79 (2d Cir. 1991); Johnson v. Payless Drug Stores NW, Inc., 950 F.2d 586, 587 (9th Cir. 1991). It is exclusive. It leaves no room for possible application of other bases for venue, including those set out in the general venue statute. It would be "anomalous," see Cortez Byrd Chips, Inc., 529 U.S. at 202-03, for the Civil Rights Act's special venue provision, see 42 U.S.C. §2000e-5(f)(3), to apply when the government is litigating, but not when private litigants are. As a matter of statutory structure, the more straightforward conclusion is that just as the special venue

2. **The Specific Trumps the General**

Another reason to think the special venue provision is exclusive is based on the principle that when two statutes seem to apply, the more specific statute typically controls.

This is a fundamental principle. It was articulated long before the passage of the venue statutes at issue in this case.[9]

Moreover, it has been applied by the Supreme Court to the question at issue here: whether a special venue provision should be regarded as exclusive or additive. See, e.g., Stonite Products Co., 315 U.S. at 566-67. Indeed, the Supreme Court applied the principle that specific statutes trump general statues in 1957, seven years before the Civil Rights Act's special venue provision passed into law.

> We think it is clear that § 1391(c) is a general corporation venue statute, whereas § 1400(b) is a special venue statute applicable, specifically, to all defendants in a particular type of actions, i.e., patent infringement actions. In these circumstances the law is settled that 'However inclusive may be the general language of a statute, it 'will not be held to apply to a matter specifically dealt with in another part of the same enactment. * * * Specific terms prevail over the general in the same or another statute which otherwise might be controlling.'
>
> We hold that 28 U.S.C. § 1400(b), is the sole and exclusive provision controlling venue in patent infringement actions, and that it is not to be supplemented by the provisions of 28 U.S.C. § 1391(c).

---

provisions are exclusive when the government is litigating, see 42 U.S.C. § 2000e-16(d), they also are exclusive when private parties are. Cf. Cortez Byrd Chips, Inc., 529 U.S. at 194 (deciding whether a special venue statute is exclusive based, in part, on avoiding "needless tension" within a statute); see also id. at 199, 202-03.

[9] See, e.g., Kepner v. United States, 195 U.S. 100, 125 (1904); Rodgers v. United States, 185 U.S. 83, 88-89 (1902); Townsend v. Little, 109 U.S. 504, 512 (1883); Ex Parte Kan-Gi-Shun-Ca, 109 U.S. 556, 570 (1883); see also Crane v. Reeder, 22 Mich. 322, 334 (1871); Pease v. Whitney, 5 Mass. 380, 384 (1809).

Fourco Glass Co., 353 U.S. at 228-29 (citations omitted) (alterations in original).

In short: specific statutes trump general statues, and this principle is (a) deeply established in American law, and (b) has been used to analyze the precise type of question at issue here --- including by the Supreme Court in the years before Congress' inclusion of the special venue provision in the Civil Rights Act of 1964.

Against this backdrop, Congress was entitled to presume that the specific venue provision it passed in 1964 (the Civil Rights Act's special venue provision) would be understood as prevailing over the general venue statute.[10] And on this understanding, the special venue provision is the "sole and exclusive provision controlling venue." Id.

3. **Precedent**

The conclusion set out above, that the Civil Rights Act's special venue provision is exclusive, is in keeping with the views of the majority of federal courts that have considered the question. See Allen v. U.S. Dept. of Homeland Sec., 514 F. App'x 421, 422 (5th Cir. 2013); Pinson v. Rumsfeld, 192 F. App'x 811 (11th Cir. 2006); Harding v. Williams Property Co., 163 F.3d 598, at *2 n.5 (4th Cir. 1998); Pierce v. Shorty Small's of Branson Inc., 137 F.3d 1190, 1191 (10th Cir. 1998); Bolar, 938 F.2d at 378-79; Johnson, 950 F.2d at 587; Stebbins v. State Farm Mut. Ins. Co., 413 F.2d 1100, 1102-03 (D.C. Cir. 1969).[11]

---

[10] See, e.g., Dorsey v. United States, 567 U.S. 260, 274 (2012); Equal Employ. Opp. Comm. v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991); Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990); Dekalb Cnty Pension Fund v. Transocean Ltd., 817 F.3d 393, 409-10 (2d Cir. 2016).

[11] Two points. First, some cases take a different view, and treat the special venue provisions as additive. See Eberhart v. Baker, 652 F. Supp. 1475, 1476 (W.D. Pa. 1987); Wright v. Columbia Univ., 520 F. Supp. 789, 795 (E.D. Pa. 1981). Second, the conclusion that the special venue provision is exclusive is not inconsistent with Third Circuit precedent. See Emrick v. Bethlehem Steel Corp., 624 F.2d 450, 454 n.5 (3d Cir. 1980) (arguably assuming the special venue provision of the Civil Rights Act is exclusive); Kabacinski v. Bostrom Seating, 98 F.

* * *

In sum, the Court concludes the special venue provision of Title VII of the Civil Rights Act of 1964 is exclusive. Satisfying that provision is the only way to establish venue. The general venue statute does not provide an added way to do so.[12]

**B. Applying the Law**

The Civil Rights Act's special venue provision is controlling, and under that provision a case typically may be brought:

> [I]n any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice[.]

42 U.S.C. § 2000e-5(f)(3).

Here, this points to New York, not New Jersey.

The alleged unemployment practice was "committed" in New York. That is the location of the hospital where the Plaintiff worked before she was fired. See Complaint at 4; Declaration of Lauren Carberry at ¶ 3. And that is presumably where the Defendant made the decision to fire her. See Declaration of Lauren Carberry at ¶ 4.[13]

---

App'x 78, 82-83 (3d Cir. 2004) (same); see also Superior Oil Co., 656 F.2d at 35 (dicta). cf. Cortez Byrd Chips, 529 U.S. at 204 (somewhat similar, construing Equal Employ. Opp. Comm., 499 U.S. at 256).

[12] The strongest counter-argument: the special venue provision of the Civil Rights Act indicates where a case "may" be brought, not where it must be brought. This argument does not carry much weight here. See Cortez Byrd Chips, 529 U.S. at 198; Radzanower, 426 U.S. at 152.

[13] On an occasional basis, about once every six weeks, the Plaintiff worked from her home in New Jersey. XXXX. This does not suggest the alleged "unlawful employment practice" was committed in New Jersey. See 45B Am. Juris. 2d Job Discrimination § 1824 ("the court must determine venue by

The "relevant" employment records were kept in New York --- now, see id. at ¶¶ 5, 6, and also when the Defendant decided to fire the Plaintiff. See id. at ¶ 4.

Finally, what is "the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice?" New York.[14] The Plaintiff ("the aggrieved person") "would have worked" in New York (at the hospital there) "but for the alleged unlawful employment practice" (her being fired from the hospital). See Complaint at 4; Declaration of Lauren Carberry at ¶ 3.

### C. Conclusion

The Civil Rights Act's special venue provision is the one that applies here, see Part II.A, and under that provision venue in this is case is proper in the Southern District of New York, but not New Jersey, see Part II.B.

## III. Dismissal or Transfer

Given the Court's conclusion that venue is not proper in New Jersey, what to do?

Title 28, United States Code, Section 1406, provides two options. The default option: the Court "shall" dismiss the case. Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007).

---

applying a commonsense appraisal of events having operative significance . . . [v]enue is proper where the 'core' discriminatory practice alleged occurred even though the employees worked elsewhere"); Callahan v. BNSF Railway Co., 2018 WL 11218650, at *5 (D. Or. May 4, 2018) (cases focus on where the plaintiff's "employment was based" to determine venue); see also Podell v. Austin, 2023 WL 4916372, at *4 (E.D. Pa. July 31, 2023); Binks v. US Tech Solutions, 2020 WL 6701470, at *2 (D.N.J. Nov. 12, 2020); Moore v. City of Kankakee, 2015 WL 2455116, at *2 (N.D. Ill. May 22, 2015). Note that the Plaintiff states that she worked on her letter requesting an accommodation from her home in New Jersey. See Reply to the Defendant's Motion to Dismiss at 2. But working on the letter from home does not mean that home is where the workplace discrimination against her was "committed."

[14] In particular: the Southern District of New York, where the hospital is.

Or the alternative: the Court may transfer the case "if it be in the interest of justice." Id.

The Court's conclusion: the "interest of justice" requires transfer, not dismissal.

### A. The Interest of Justice

The Equal Employment Opportunity Commission told the Plaintiff during September of 2022 that it would not proceed further with her claim, see Complaint at 9, and that if she wanted to go forward herself she would therefore have 90 days to bring a lawsuit. See id.; see generally Seitzinger v. Reading Hosp. & Medical Center, 165 F.3d 236, 239 (3d Cir. 1999). The Plaintiff then filed her case, here in New Jersey, within 90 days. See Complaint at 1, 10.

If the case were to now be dismissed, as the Defendant wants, and filed again elsewhere, the re-filed case could potentially be dismissed on timeliness grounds, because the Plaintiff's 90 days passed during 2022.

That would be unfair. The Plaintiff is not a lawyer. And she is pro se --- she does not have a lawyer working for her here. She should not lose her day in court because she filed her complaint in the wrong district.[15]

### B. Forum Shopping and Bad Faith

The Defendant does not discuss the timeliness issue. Rather, the Defendant argues for dismissal, as opposed to transfer,

---

[15] See, e.g., Goldlawr, Inc. v. Heiman, 369, U.S. 463, 466 (1962) (noting that the dismissal would result in the plaintiff losing certain causes of action due to timeliness issues, and that this was a "typical example" of the problems transfer seeks to avoid); Carteret Sav. Bank F.A. v. Shushan, 919 F.2d 225, 228 (3d Cir. 1990) (tramsfer rather than dismissal is "particularly when if the matter was dismissed the plaintiff would lose a substantial part of his cause of action due to the statute of limitations"); see also Minnette v. Time Warner, 997 F.2d 1023, 1026-27 (2d Cir. 1993) ("the transfer of an action, where the statute of limitations has run, is in the interest of justice"); Sinclair v. Kleindienst, 711 F.2d 291, 294 (D.C. Cir. 1983) ("Transfer is particularly appropriate where, as here, without a transfer the cause of action would be barred by the running of the applicable statute of limitations[.]").

because the Plaintiff "has engaged in a flagrant case of forum shopping." Motion to Dismiss Brief at 1.

This is essentially an accusation of bad faith. And bad faith may sometimes be a reason to dismiss a case rather than transfer it. See 17 Moore's Fed. Prac. Civ. § 111.34; Lafferty, 495 F.3d at 78 n.7; see also In re Hall, Bayoutree Assoc., Ltd., 939 F.2d 802, 805-06 (9th Cir. 1991).

But in this case, the accusation of forum shopping makes little sense.

Sometimes, a plaintiff may potentially engage in forum shopping because she wants to proceed under one body of law (which a certain court will apply) as opposed to another body of law (which another court would apply).

But the only claim here is a federal law claim. The same law will be applied wherever this case is brought. And as to the applicable parts of federal law, there is no suggestion that New Jersey interpretations are meaningfully different than New York interpretations.

A plaintiff might also conceivably engage in bad faith forum shopping to burden the defendant, to gain some leverage.

But that is not a live issue. The Defendant is a major hospital. And as the Defendant has noted --- there is no serious logistical difference between litigating in Newark (where the Court sits) versus litigating in Manhattan or White Plains (where the Southern District of New York courthouses are). See Motion to Dismiss Brief at 10. All of these courthouses are fairly close to each other.

Finally, a plaintiff might sometimes seek out a forum where, it thinks, the jury pool will be more favorable.

But this case is likely to be decided on the law --- by a court, not by a jury. Moreover, and as she points out, the Plaintiff has not requested a jury trial here. See Reply to the Defendant's Motion to Dismiss at 4. And finally, on the issues at play in this case the Court does not perceive substantial New Jersey-versus-New York jury pool differences, of the kind that might potentially undergird a strategy of bringing suit in one place instead of another.

Bottom line: though the Defendant ascribes a "forum shopping" motive to the Plaintiff, that does not make sense. There is no meaningful motive to forum shop here.[16]

As to the Defendant's more general suggestion of the Plaintiff's bad faith for filing in New Jersey: that, too, does not appear to be present. The law can sometimes be technical and obscure. Indeed, the Plaintiff says she had not heard the words "venue" or "forum shopping" before the Defendant moved to dismiss her case. See Reply to the Defendant's Motion to Dismiss at 1. There is no reason to doubt this.[17] The mistake here, of a pro se plaintiff suing in the wrong district, was apparently only that: a mistake.[18] It is a mistake that perhaps underscores the law's complexity. But it is not a mistake that, without more, implies bad faith. And such asserted bad faith is the only reason the Defendant offers for dismissing this case, rather than transferring it.

---

[16] Why, then, did this case get filed in New Jersey? The Plaintiff is from New Jersey, see Complaint at 2, but was fired from her New York job. See id. at 7. From a commonsense perspective, New Jersey and New York were sensible-enough places to consider filing a lawsuit. Indeed, the Plaintiff explained that she planned to file her case in New York, but struggled with the New York court's website --- and therefore brought her case in New Jersey. See Reply to the Defendant's Motion to Dismiss at 1. This is a long way from a "flagrant case of forum shopping."

[17] Indeed, from the Founding, one of our law's aspirations has been to eliminate unnecessary jargon and complexity, to make society's rules more readily understood by everyone they touch, including non-lawyers. Justice James Wilson was particularly associated with this approach. See, e.g., Letter from James Wilson to The Speaker of the House of Pennsylvania (Aug. 24, 1791) in 1 Collected Works of James Wilson 418-422 (Kermit L. Hall & Mark David Hall eds., 2007) ("Collected Works"); James Wilson, "Lectures on Law" (1791) in 1 Collected Works 437 (use of a "thick mist of terms of art," and "a language unknown to all but those of the profession," limits "knowledge of the law" to the "initiated" --- but knowledge of the law "ought, especially in a free government, to be diffused over the whole community").

[18] See footnote 16.

## IV. Conclusion

The Defendant's motion to dismiss is denied, and its motion to transfer to the Southern District of New York is granted.

IT IS on this 5th day of October, 2023, so **ORDERED**.

Michael E. Farbiarz, U.S.D.J.